Good morning, Your Honors. As Your Honors are no doubt aware, there's a debate about the value of oral arguments and in thinking about what remarks to address to Your Honors this morning, I want to try to do two things in addition to answering your questions. One is to crystallize what the issue is that we're seeking relief on in this case, and the second is to give some general context because there are a lot of facts overlaying what's happening here. In this case, there was a search warrant plan, a search warrant execution that could not have done anything else than result in the over-seizure that resulted. There were . . . that could not have done anything else than result in the over-seizure of documents that did result in this case. This was an investigation out of Wisconsin by the IRS Criminal Investigative Division. There was a search warrant plan put together by Agent Schrader, who's the defendant here, and that plan called for fifty-seven people to come into this corporate office environment in Simsbury, Connecticut, and to seize documents related to 419 plans, which is a tax code. There was a sense that there was an abusive tax shelter. That was what the allegation was. The process of doing this, the items to be seized list, not only does not clearly define what 419 plan is, nor is it clearly defined in the affidavit or in anything involving the warrant or in the plan itself, but the affidavit includes a catch-all line in there that says that basically any documents from any entity on site could be seized if it had something to do with a 419 plan. So it was critical at the outset that the people who were searching knew what a 419 plan was or knew how to recognize . . . Has this issue been litigated in the criminal case? I don't know that to be true, Your Honor. You're saying specifically . . . I'm asking whether it was. Was there a challenge to the search? Was there a motion to suppress in the criminal cases? In Mr. Carpenter's criminal case, Your Honor, yes, there was. There was a motion to suppress. Now, procedurally, this case . . . What happened to that? There was a denial of the motion to suppress. There's been an appeal after judgment in the criminal case, and that is, I think, going to be heard by this Court in December. But this particular issue was not addressed in the motion to suppress. There were issues concerning the facial validity of the warrant, which we also have concerns about. But the question of whether Agent Schrader planned for an over-seizure and then also failed to properly supervise the search so that an over-seizure would be prevented, those questions were not addressed. I'm not claiming that Agent Schrader did anything in terms of his written operational plan or his advice to the agents that was inconsistent with what the magistrate judge authorized, right? Well, I believe it was inconsistent in the sense that . . . In other words, your problem, going to Judge Chin's question, was really with the scope of the warrant that was approved by the Court. There was nothing that the agent added, either in writing or orally, that transformed this into a general warrant. I don't think necessarily in writing or orally, Your Honor. What I think it was in the implementation of the plan and in the design of the plan itself. Fifty-seven people. Agent Schrader doesn't know who these people are. He's pulling them from the Boston office and some people from Connecticut. What difference does that make? The difference it makes, Your Honor, is that especially given that catch-all provision in the warrant as signed by Magistrate Judge Smith, it was necessary for these people, these agents, to understand what a 419 plan was so that they didn't just sweep up every document in the place. Know them. Correct, Your Honor. And so they could be the most brilliant 417 agents in America. He still might not know them. And it was incumbent, I believe, on Agent Schrader and on Agent Enstrom as well, whose motion to dismiss is also part of the question here. It was incumbent. Even assuming the search was excessive, was there clearly established law to indicate that indeed it was excessive? I mean, why doesn't qualified immunity apply? I think for two reasons. One, because, Your Honor, it's black-letter law that one has to accord to the confines of the warrant. And this search did not do so because there were 322 boxes seized. We were here two years ago in front of, Your Honor, Judge Chin and some other panelists regarding all this evidence that's been seized and still has not been returned. There were also 11 computers and servers that were imaged. They brought down an 18-wheeler truck from Wisconsin and planned for 57 agents to come in and essentially vacuum up all these documents. And there was a line in the— Some were security and some were to collect. Isn't that true? You used 57. Doesn't the record show that some were there for security? Correct, Your Honor. I believe there were approximately 40, like between 39 and 40. Okay. So 39, was that too many to get the number of documents that were retrieved? And that's an interesting point because the number of documents that were retrieved, if we assume—the court seems to have—the trial court seems to have assumed that that was proper and therefore said, well, you needed 39 agents because you needed to seize all these documents. But that's not—that these documents were not responsive to the warrant. So if you're going to do a search that is within the confines of the warrant, you don't need those 39 people. In fact, our view is that the planning— It could be argued that to the extent that you're going to go through each document as you're urging to see whether or not it's particularly responsive, you need even more agents to do it. You need more time. It took 12 hours to conduct what you're arguing is too broad a search. Wouldn't it take even more time to conduct the more detailed search that you're urging? It's possible, Your Honor, but—and I understand that computers are imaged and these sorts of things happen so that they can do some more searching after that. And there's some leeway in the law apparently for that. But it does not appear to be necessary if they have done the proper preparation. If these people knew what they were looking for. Because you don't open up all these other avenues if they know what a 419 plan is. They don't go into all these other businesses' documents. The district court noted that you seemed to argue to the district court that it was so obvious what a 419 plan document was and was not that the agents who were doing the search should have realized it on their own. And that's inconsistent with your arguing more generally about Agent Schrader's response to that. I think there were multiple times the district court noted that. And far be it from me to say anything about Judge Underhill's interpretation, but when I said that in the brief, what I was saying was that looking at it now from the legal perspective of the judges looking at it and the lawyers looking at the search warrant, we can understand looking at it what's responsive to it and what's not. And so in looking at what was seized, we can clearly see that there were items seized that were not responsive. Whether that would be sufficient for an agent who's on scene who has, by the way, not been given instruction the night before, as the evidence showed. They ran over the items to be seized without any discussion of what the 419 plan was. For those people, it would not likely have been so obvious. And in fact, Agent Enstrom, who's now supervising in NDC, did not know as she sat there to deposition six years later what a 419 plan was. Thank you. We'll hear from your colleague. Thank you, Your Honor. Good morning, Your Honors. My name is John Einhorn, and I represent the other appellant, Chris Mill Capital. I only wanted to add and call the court's attention to the 28J letter that we filed fairly recently citing the 650 Fifth Avenue case. And I would ask Your Honors to consider the warrant itself as being facially deficient. I know Mr. Nicholas talked about that a little, but I just wanted to call the court's attention. We believe that's an issue that ought to concern the court. Thank you. Thank you. Good morning, Your Honors. Gretchen Wolfinger for the individual defendants, Agents Enstrom and Schrader. Opposing counsel did not discuss the claims against Agent Enstrom, whether they were barred by the statute of limitations and whether they related back. Would the court like me to briefly address that issue? You're free to address whatever. Okay. The district court correctly held then that the claims were barred by the statute of limitations against Agent Enstrom because the naming of a specific party does not avoid the statute of limitations when initially a John Doe defendant has been named. And the exception that the appellants would like to rely on has not been accepted by this circuit and the circuit certainly shouldn't accept that exception because it can't be met in this case. With regard to Bivens' liability for Agent Schrader, I'd like to make clear initially that the validity of the warrant is not before this court. It's been upheld on a motion to suppress in the related criminal case and any efforts to undermine the warrant would run afoul of Heck v. Humphrey. With regard to The argument is that there is a different issue being raised here? Is that true? Does it matter? I don't think it matters. The validity of the warrant has already been upheld, so questioning whether it's a general warrant or facially overbroad is, as I said, not before the court. Heck v. Humphrey would bar the court from addressing that in any event, regardless of the arguments that are raised about the warrant. With regard to Agent Schrader, the district court found that he was not a supervisor and also was not liable under any other theory of liability. Number one, he wasn't there until the very end of the search, so wasn't participating in or aware of any alleged constitutional violations. Number two, there was not a failure to train. He held a pre-search briefing at which all the agents were present, including his supervisor. They went over the warrant, they went over the items to be seized, and in fact, Agent Schrader told us exactly, in her deposition, exactly what was to be seized during the search, and there was an opportunity to ask questions. On the day of the search, Agent Enstrom was present. She had the warrant and the attachment to the warrant, and also there was a tank team present in case there were any questions about whether legal material was to be seized. I would note that opposing counsel talks a lot about over-seizure and documents that were improperly seized, but doesn't identify what those documents were, other than mentioning boxes with legal notations on them. He certainly can't mean that all 300 and some boxes were improperly seized. With regard to the number of agents that were present at the search, the district judge found that Agent Schrader's plan was reasonable based on a number of factors and the information that he knew at the time. It was an extremely large building to be searched with a number of offices in it. There was also a number of employees present who would have to be supervised and gathered in one place. The search warrant plan provided for videographers, it provided for the tank team, and there was a large volume of documents to be searched. So the fact that there were a large volume of documents and several hundred boxes were seized in what was a fairly long day indicates that the search warrant plan was reasonable in light of everything known at the time. I would also argue that most importantly, because this is a Bivens case, that it was not clearly established at the time of the search that the number of agents was clearly unreasonable or per se a violation of the law. In fact, we cite in our brief a number of cases that indicate that courts are very reluctant for obvious reasons to come up with a per se approach to what number of agents are reasonable versus unreasonable, because it is certainly a fact-specific determination. If there are no questions, thank you, Your Honors. Thank you. We'll hear the rebuttal. Thank you, Your Honors. Just to quickly address a couple of points from counsel's argument. First off, the supervisory liability argument under Cologne does not apply to the planning claim. The planning claim is a direct participation claim. Under Terror v. C. V. Torizo, a formulator of a plan has direct liabilities. Is there a clearly established law that you can point to that would say having 57 agents involved in a search, a building of this size, is unreasonable or excessive? Your Honor, there is a reasonableness test. That's what's clearly established in the law. There's no number, and the courts that have addressed Ruttenberg and Mountain Pure have rejected, and even Judge Underhill said it's impossible to come up with a specific number because the circumstances will change. It's a reasonable test under the totality of the circumstances. But is there any case that holds, in fact, anywhere near these, that this was unreasonable? In the Ruttenberg case, Your Honor, that's the way it went. In Mountain Pure, they did not. It depends, too, I think, on the amount of force that's expected, and there was low risk here, whereas in Ruttenberg, Mountain Pure, State of Red, these are situations in which force was expected, and, in fact, there was some indication of that happening. Also, for example, I can't remember the case name. You're not arguing unreasonable force, though, are you? Unreasonable force, just as to the rate itself, the use of the 57 agents. There was no force at all, was there? Well, the show of force of 57 agents, Your Honor. But I led with overseasure. You're saying it's unreasonable force to have a lot of agents? In this particular situation, because it wasn't necessary for any of the three needs You're saying force means number of agents, or number of agents means force. Yes, which is the Really? Any case ever say that? That's the question that was wrestled with in Ruttenberg, Red, Mountain Pure, as well, and there are a couple of others that are cited in the briefs that I can't recall at the moment. Wrestled with? Anybody ever say that as a law? No, but what the courts do is they leave it open. If they never said it, then how is it clearly established? Because the test that they, what they say, Your Honor, is that there is no specific number that we can say because every circumstance is going to be different, but the hallmarks are reasonableness. So there is, there is a situation in which it would be unreasonable to have the number of agents that could be brought. It just wasn't any of those particular cases, except Ruttenberg. Couldn't the number be reasonable not based upon a concern that there's going to be violence, but again, going to the number of employees that are there, the square footage of the building, you know, all the different cubicles that have to be searched, can't that justify needing a lot of agents as opposed to necessarily believing that there's going to be some violence? Yes, Your Honor, and that's the question we'd like to put to the jury. And just with respect to the supervisory piece, Judge Underhill did find that, or held that Agent Schrader was not a supervisor. I note that there's no test, actually, that I could find that clearly states what a supervisor is in the context of supervisor liability. If you go to Title VII cases in employment, there's clear tests out there for what's a supervisor and what's not. Here we have Agent Schrader having formulated the entire plan, being the person there who was supposed to effect it. He was essentially the knowledgeable person on 419 plans, and he did not provide that knowledge to people, and as a result, there was over-seizure, and as a result of the plan being to over-seize. Thank you. Thank you, Your Honors.